## ROYAL INS. CO., Limited, v. SCRITCHFIELD.

No. 5159. Opinion Filed October 5, 1915.

(152 Pac. 97.)

1. **INSURANCE—Fire Insurance Policy—Provision for Record— Substantial Compliance.** Substantial compliance with a provision in a fire insurance policy requiring "that the assured will keep a book containing a faithful record of all cotton put into and taken out from the gin or cotton house, and that such record will be produced in case of loss," is sufficient; and where the assured keeps and produces a record from which the amount and value of insured cotton contained in such house and destroyed at the time of the fire can be reasonably ascertained, there is substantial compliance therewith.

2. **SAME—False Swearing Provision—Breach—Effect.** A willful, intentional breach of the fraud and false swearing provision of the Oklahoma standard fire insurance policy by the insured as to a material matter in the proof of loss avoids the policy.

3. **SAME—Action on Policy—Proof of Loss—False Statement— Question for Jury.** Whether or not a statement contained in a proof of loss furnished to an insurer in compliance with the terms of an insurance policy contains a statement as to material matter, false to the knowledge of the assured and willfully made with intent to deceive, is a question of fact to be determined by the jury, under proper instructions, upon consideration of all the facts and circumstances in evidence surrounding the making of the same.

(Syllabus by Bleakmore, C.)

*Error from District Court, Kingfisher County;*
*James B. Cullison, Judge.*

Action by W. J. Scritchfield against the Royal Insurance Company, Limited. Judgment for plaintiff, and defendant brings error. Affirmed.

*Scothorn, Caldwell & McRill,* for plaintiff in error.

*W. L. Moore,* for defendant in error.

Opinion by BLEAKMORE, C. This is an action on a fire insurance policy commenced in the district court of

Kingfisher county on the 13th day of September, 1911, by W. J. Scritchfield, as plaintiff, against the Royal Insurance Company, Limited. The parties will be referred to as they appeared in the trial court.

On September 29, 1910, defendant issued to plaintiff its fire insurance policy, by the terms of which it insured him in the sum of $2,500 for a period of four months against loss or damage by fire to unbaled or seed cotton contained in a certain cotton house. On December 13, 1910, a fire occurred and a portion of said cotton was destroyed. There was trial to a jury resulting in judgment for the plaintiff in the sum of $822.22.

The policy contained the following provisions:

"Assured also warrants each of the succeeding clauses in this form and the statements and undertakings therein, and agrees that the breach of any one or more of said statements or undertakings shall render this policy null and void. * * *

"Cotton Record. That the assured will keep a book containing a faithful record of all cotton put into or taken out from the gin or cotton house, and that such record will be produced in case of loss. * * *

"This entire policy shall be void. * * * in case of any fraud or false swearing by the insured, touching any matter relating to this insurance or the subject thereof, whether it be before or after loss."

Plaintiff kept a record of all cotton purchased by him, giving the name of the person from whom purchased, the number of pounds, and the price paid therefor. A portion of the cotton so purchased was stored in the cotton house described in the policy, and a part thereof was ginned directly from wagons without being placed in said house. It was not shown by such record the amount of cotton

stored in the cotton house when the policy was issued nor the amount taken therefrom and ginned; but by parol plaintiff was permitted to prove that on the 23d day of November, 1910, all the cotton was removed from said house, a symbolic memorandum being made thereof by the bookkeeper by the use of an "x" appearing upon the margin of the books under that date, and that all of the cotton thereafter purchased up to the time of the fire was placed in said cotton house, and none was taken out. It was only for the loss of such cotton purchased and stored in said house after November 23, 1910, that recovery was sought.

Defendant contends that by the failure of plaintiff to comply with the cotton record clause the policy was rendered null and void, and no recovery could be had thereunder. Speaking of this identical clause in a similar policy, this court, in *Scottish Union & National Insurance Co. et al. v. Moore Mill & Gin Co.*, 43 Okla. 370, 134 Pac. 12, held:

"It is a general principle that the purpose of said clause is accomplished when the assured produces data from which the amount and value of the cotton insured and destroyed at the time of the fire can be reasonably ascertained; a substantial compliance with the warranty therein contained is sufficient."

In our opinion, the books of plaintiff furnished a record kept in substantial compliance with the provisions of the policy, from which the amount and value of the cotton destroyed could be readily ascertained at the time of the trial. In his sworn proof of loss and schedule submitted to the defendant after the fire plaintiff stated that the amount and value of the insured cotton immediately preceding the fire was 62,482 pounds, at $4.83 per hundred,

totaling $3,017.88, and that 51,972 pounds thereof, of the value of $2,510.25 were destroyed, and claimed of defendant under the terms of the policy by reason of such loss, $2,263.41. According to calculations found in the brief of defendant made from the books of the plaintiff showing his purchases of cotton placed in the cotton house subsequent to November 23, 1910, it is calculated that there was in said house only about 41,313 pounds of cotton at the time of the fire, and an admitted salvage of 10,510 pounds.

Defendant insists that plaintiff was guilty of false swearing in knowingly stating in said proof of loss that he had in said cotton house at the time of the fire, cotton greatly in excess of the actual amount therein, and in willfully exaggerating the amount of the cotton destroyed and the loss sustained thereby. And it is urged that there was no attempt on the part of plaintiff at the trial to explain the discrepancy between the statement in the proof of loss and the facts testified to by him as to the amount of cotton in the house and destroyed when the fire occurred; but plaintiff asserts that from the evidence it is shown that he relied on exactly the same information in the preparation of the proof of loss that he presented upon the trial, *viz.*, his books showing a record of cotton purchased subsequent to November 23, 1910, and therefore the difference between the two statements may rationally be accounted for as the result of honest miscalculation on his part at the time the proof of loss was prepared, and that such was evidently the conclusion of the jury in arriving at their verdict. The rule applicable in the instant case was announced in *Orient Insurance Co. v. Van Zandt-Bruce Drug Co.*, 50 Okla. 558, 151 Pac. 323, as follows:

"A willful, intentional breach of the fraud and false swearing provision of the Oklahoma standard fire insurance policy by the insured as to a material matter in the proof of loss avoids the policy."

The falsity and materiality of such statement and the intention of the insured in making the same are questions of fact to be determined by the jury. In the instant case the amount of cotton contained in the cotton house was excessively stated in the schedule furnished to defendant in compliance with the terms of the policy as the basis of the loss sustained by the assured by reason of the destruction of the property covered by the policy. In regard to the making of such statement, plaintiff testified:

"Q. Mr. Scritchfield, referring now to your Exhibit No. 4, which is a sworn statement of loss submitted to the defendant in this case, you swore to the amount of your loss and damage and the cotton on hand in the cotton house at the time you prepared this proof of loss, didn't you? A. Yes, sir. Q. Where did you get the information? A. From the book right here; from the daily book right there. Q. From this Exhibit 3? A. Yes, sir. Q. Did you get it yourself or take some fellow's word for it? A. I added it up myself, I think, and Mr. Moore also added it up. Q. And you went over Exhibit 3 carefully, and after having done that this Exhibit No. 4 was prepared, and with full knowledge of the entries contained in No. 3 you signed and swore to this Exhibit 4 and submitted it to this defendant as your claim for loss and damage under this policy? A. Yes, sir."

While from the willful making of a material statement in a proof of loss required by the terms of an insurance policy, which to the knowledge of the assured is false, in the absence of attendant conditions from which the contrary may be reasonably inferred, an intention to deceive may be implied, yet whether or not such statement

was willfully made with intent to defraud is a question of fact to be determined by the jury under proper instructions, upon consideration of all the facts and circumstances in evidence surrounding the making of same. In the instant case the jury, in returning a verdict for plaintiff, necessarily found that there was no intent on his part to deceive the defendant in the making of such proof of loss.

Defendant also contends that there was reversible error in giving the following instructions:

"Gentlemen of the jury, the court instructs you that the defendant in his second defense alleges that plaintiff, after the fire, committed an act of fraud and false swearing in violation of that provision of the insurance contract which is as follows, to wit: 'This entire policy shall be void in case of any fraud or false swearing by the insured, touching any matter relating to this insurance or the subject thereof, whether it be before or after loss.' In this connection the court instructs you that, if you believe from the evidence that the plaintiff included in his proof of loss which he furnished to the defendant articles of property which did not belong to him, or if he reported to the company in his proof of loss an extremely large amount of cotton to be in the cotton house which, in fact, was not in the house at the time of said fire, and he made such false and fraudulent report knowingly and with intent to defraud the company, knowing that he had no right to do so, this would avoid the policy, and the plaintiff could not recover in this suit, and it would be your duty to find for the defendant."

This instruction, eliminating the phrase "knowing that he had no right to do so," was a substantially correct statement of the law applicable. In our opinion, the interpolation of such phrase could not have misled the jury to the prejudice of defendant.

There are other errors assigned, but their consideration is deemed unnecessary.

We have examined the entire record, and find no prejudicial error therein.

It follows that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.