COUNTY FIRE INS. CO. OF PHILA-DELPHIA v. HARPER et al.

No. 34732.   May 20, 1952.

Rehearing Denied Nov. 5, 1952.

*249 P. 2d 705.*

360

Rittenhouse, Webster, Hanson & Rittenhouse, Oklahoma City, for plaintiff in error.

Logan, Cummins & Oerke and Warren F. Chrisman, Lawton, for defendants in error.

DAVISON, J. By this action, Clyde Harper, as plaintiff, seeks to recover from County Fire Insurance Company of Philadelphia, a corporation, as defendant, upon an insurance policy issued by it for loss resulting from the destruction of an automobile by fire. The parties will be referred to as they appeared in the trial court.

On March 13, 1948, plaintiff bought a 1941 Buick 4-door sedan from one David Woods, who had theretofore, on September 30, 1947, insured it with defendant under the terms of the insurance contract which is the foundation of this suit. On the same date as the sale, the defendant, through its local agent, transferred the beneficial interest in said policy to plaintiff. The automobile was destroyed by fire of undetermined origin on August 16, 1948, and this action was brought to recover the resulting loss. A trial was had to a jury and from a verdict and judgment for plaintiff in the amount of $1,000, the defendant has perfected this appeal.

Defendant first insists that plaintiff's loss was not covered by the provisions of the policy sued upon and attached to the petition as an exhibit, in that said contract did not provide for payment for loss suffered by "D, Fire, Lightning and Transportation." The following is a copy of that part of the insurance policy involved, wherein the portions thereof which were typed in have been underlined to distinguish them from the printed portions, to wit:

"Item 3. In Consideration of the Payment of the Premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy, the company agrees to pay for direct and accidental loss of or damage to the automobile, hereinafter, called loss, sustained during the policy period, with respect to such and so many of the following coverages as are indicated by specific premium charge or charges:

| Coverages (as hereinafter defined) | Limits of Liability (Insert Amount or "Actual Cash Value") | Net Rate | Premium |
|---|---|---|---|
| A—Comprehensive—Loss of or Damage to the Automobile, Except by Collision but including Fire, Theft and Windstorm | $ | $ | $ |
| B—Collision or Upset | Actual Cash Value less $50.00, which deductible amount shall be applicable to each Collision or Upset | | $50.00 |
| C—Convertible Collision or Upset | $ Actual Cash Value Additional Payment | $ | $ |
| D—Fire, Lightning and Transportation | $ Actual Cash Value | $ | $ |
| E—Theft (Broad Form) | $ Actual Cash Value | $ | $10.00 |

| | | | |
|---|---|---|---|
| F—Windstorm, Earthquake, Explosion, Hail or Water | $ | $ | $incl. |
| G—Combined Additional Coverage | $ Actual Cash Value | $ | $ 1.30 |
| H—Towing and Labor Costs | $10 for each disablement | $ | $ |
| J— | $ | $ | $ |
| | | Total Premium | $61.30" |

In determining the intention of the parties, the rule to be followed was recently stated by this court in the case of Combined Mut. Cas. Co. v. Metheny, 203 Okla. 522, 223 P. 2d 533, as follows:

"Contracts of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions of every contract of insurance will be construed against the insurer who proposes and prepares the policy. If a policy of insurance and provisions in connection therewith are capable of being construed in two ways, that interpretation should be placed upon them which is most favorable to the insured."

In the case at bar, the contract provided that the limit of liability of defendant for loss of the property by "Fire, Lightning and Transportation" was fixed at "Actual Cash Value," which latter clause was typed in by the agent of defendant, who issued the policy. The contract further provided that the defendant agreed to pay only that loss or damage as resulted from the listed, printed coverages "indicated by specific premium charge or charges." No amount was entered in the "Premium" column for "Fire, Lightning and Transportation" but on the next line for coverage for "Theft (Broad Form)" the "Limit of Liability" column was filled in "Actual Cash Value" and in the "Premium" column was typed "$10.00," immediately under which was written "incl." This last abbreviated word "incl." would have no meaning or purpose unless it meant that the $10 premium for theft coverage included the premium for fire, lightning and transportation also, nor would the typed-in words, "Actual Cash Value,"

under limit of liability, have any meaning otherwise. The original insurance policy has been substituted in the record in this court for the copy contained in the case-made. The only conclusion that can be reached, as to the intent of the parties when entering into the contract, is that the insurance should cover loss of the property from fire, lightning and transportation. This conclusion is in harmony with the rules, rates and premiums schedule governing insuring of automobiles which the State Insurance Board had adopted under the provisions of sections 131 and 132 of Title 36 O. S. 1941. Those rules provide that "Theft coverage may be granted only in connection with Fire coverage, and for a like amount in both cases," and the premium fixed thereby for both coverages combined, upon such an automobile as here involved, was $10.

The rules, rates and premiums governing the insuring of automobiles, referred to in the preceding paragraph, were not put in evidence in the trial of the case below but, as was said in the case of State ex rel. Murphy, Commissioner of Labor, v. Coca-Cola Bottling Co., 190 Okla. 590, 126 P. 2d 86:

"* * * It is the general rule that courts will take judicial notice of the rules and regulations of the executive departments of the government. Zevely v. Weimer, 5 Ind. Terr. 646, 82 S.W. 941, affirmed 8 Cir., 138 F. 1006, 70 C.C.A. 683; Allen v. State, 238 Ala. 437, 191 So. 809, 20 Am. Jur. Evidence 44, p. 68, and footnote."

Another defense relied on by defendant was an alleged breach by plaintiff of warranties, as to amounts of purchase price of and mortgage indebtedness against the automobile, set out in

the assignment of the insurance policy. However, the "Assignment of Interest" attached to said policy was signed only by defendant's agent and not by the assured. Any representation by him would, therefore, have had to be made orally. This, he testified, he did not do. His testimony at the trial was that he did not give the agent the information for the statements contained in the assignment, nor was he requested to do so and that he had no idea of where it was obtained. The agent who signed the assignment of interest was present as a witness at the trial but did not testify with reference to the assignment. The record contains no evidence of misrepresentation by plaintiff at the time of the assignment.

"Where * * * an insurance company issues a policy on an oral application and no inquiry by the company as to encumbrances or fraud or misrepresentation on the part of the insured is shown, and a mortgage not referred to in the policy is in existence, the company will be presumed to have written the policy on the knowledge of the company or its agent as to the existence of the encumbrances on the insured property, and to have waived the terms of the policy such as those above quoted, and may not defeat liability on the ground that an encumbrance was not disclosed. * * *" Mercury Ins. Co. v. Miles, 190 Okla. 607, 126 P. 2d 74.

Another of the defenses urged was that plaintiff made false statements and representations to the adjusters who investigated the loss on behalf of defendant, with reference to the purchase price of the automobile. This defense was not available, not being within the issues formed by the pleadings. The answer contained no allegation with reference thereto. In discussing the allegations requisite for a defense of avoidance of an insurance contract because of misrepresentations, the Oregon court, in the case of Waller v. City of New York Ins. Co., 84 Ore. 284, 164 P. 959, in commenting upon the majority rule, made the following statement:

" * * * The first affirmative defense falls far short of complying with this standard. It does not show that the defendant believed the representations or that it relied upon them; and, moreover, it does not disclose wherein it was damaged by the alleged fraud, or how its risk was increased thereby. * * *"

" * * * In short, matter showing the materiality of the representations should be averred so as to enable the court to draw a conclusion that the representations were fraudulent.***"

Although not applicable therein, that rule was recognized in the cases of Orient Ins. Co. v. Van Zant-Bruce Drug Co., 50 Okla. 558, 151 P. 323, and Royal Ins. Co. v. Scritchfield, 51 Okla. 523, 152 P. 97.

In addition to what has been said above, the questions of breach of warranty and of falsity and materiality of representations were submitted in a proper manner to the jury, who, by its verdict, determined them adversely to the defendant.

The next question is based upon plaintiff's failure to furnish sworn proof of loss. The petition alleges a waiver of this policy provision by the defendant and plaintiff introduced proof that, subsequent to the fire and notice to defendant's agent of the loss, the insurer sent its adjusters to make a complete investigation; that, at their request, the car was towed to a garage where employees made minute and detailed inspection of its inner parts for the information of said adjusters; that statements were taken and everything possible was done to determine the cause of the fire and the extent of its effects. Under proper instructions, the question of waiver of formal proof of loss was submitted to the jury.

" * * * Where an insurance company receives actual notice of a loss of a motorcar by fire and the agents and adjusters of such company promptly make a complete investigation, reporting such facts to the company, and act in such a manner as would lead a reasonable person to believe no further proof necessary, the said company

thereby will be held to have waived the written verified notice required to be filed in 60 days under the conditions of the policy." Aetna Ins. Co. v. Jackson, 177 Okla. 345, 60 P. 2d 210; Home Ins. Co. v. McClaran, 197 Okla. 48, 168 P. 2d 306; Aetna Ins. Co. v. Ralls, 200 Okla. 32, 190 P. 2d 787.

The final proposition goes to the sufficiency of the evidence, of value of the property at the time of loss, to sustain the verdict and judgment. The operators and salesmen at the used car agency, where the sale to plaintiff was consummated, testified to the market value and appearance of the automobile a short time prior to the fire. Its value was fixed at $1,250. The mechanic testified as to the internal condition disclosed by his examination after the fire. Plaintiff testified concerning the repairs and improvements he had made and the relative general condition at the time the car was burned. There was also testimony as to the value of the salvage, being $250. There was no evidence offered to contradict plaintiff's witnesses. This evidence supplies the omissions pointed out in the case of Security Ins. Co. of New Haven, Conn., v. McAlister, 90 Okla. 274, 217 P. 430, in that there was "testimony showing how the car had been used and the condition at the time it was * * * (burned) as compared with condition at the time it was insured," also showing "facts from which the value of the car at the time of the loss can be ascertained."

The case was tried to a jury and all questions of fact submitted to it under proper instructions. No sufficient ground has been shown for vacating the verdict and judgment rendered.

The judgment is affirmed.

ARNOLD, C. J., HALLEY, V. C. J., and CORN, GIBSON, JOHNSON, O'-NEAL, and BINGAMAN, JJ., concur.