**NEWFOUNDLAND AMERICAN INSURANCE COMPANY, Ltd., a Corporation, Appellant,**

v.

**Howard SUESZ, d/b/a Hagen Brothers Circus, Appellee.**

No. 6615.

United States Court of Appeals
Tenth Circuit.

April 19, 1961.

---

Lewis, Circuit Judge, dissented.

Russell B. Holloway, Oklahoma City, Okl. (Rhodes, Crowe, Hieronymus & Holloway, Oklahoma City, Okl., were with him on the brief), for appellant.

Andrew J. Moore, Oklahoma City, Okl. (Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., were on the brief), for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellee Suesz, the operator of a circus, sued appellant-defendant insurance company in a declaratory judgment action to determine the responsibility of the insurer under a public liability policy for injuries received by a minor child when clawed by a lioness while the circus was in winter quarters. The court below held the insurer liable. It is here urged that there was no jurisdiction because of lack of diversity and that the policy does not cover the accident.

The insured, an Oklahoma citizen, brought suit against the insurer, a Canadian corporation, in the United States District Court for the Western District of Oklahoma. The contention is made that under 28 U.S.C. § 1332 a resident plaintiff may not sue a non-resident defendant in a United States district court within the state of plaintiff's residence. Section 1332(a) (2) gives the federal district courts original jurisdiction of all civil actions between "citizens of a State, and foreign states or citizens or subjects thereof," when, as here, the amount in controversy exceeds the statutory minimum. There is no inhibition on a plaintiff bringing suit in the federal district court of the state of his residence so long as diversity exists. The fact that 28 U.S.C. § 1441(a) authorizes removal only by a defendant does not change the situation. The right of a resident plaintiff to sue a non-resident insurance company in federal court was upheld in Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59. The jurisdictional objection is not well taken.

Insurer contends that the accident is not within the policy coverage because of the specific exclusion of accidents occurring in winter quarters. The insured insists that the exclusion does not apply because of a policy endorsement.

The face of the policy provides that the insurer agrees to pay all loss arising out of insured perils "as per endorsement attached." The policy has two attachments, each of which contains the state-

ment that it is an endorsement. One of these is on a printed form bearing the title "Carnival Amusement Liability." It contains a premium rating schedule in which "items insured hereunder" are grouped into four categories with varying charges for each. Section (a) lists riding devices and fun houses and in Section (b) are shows, penny arcades and motor dromes. Opposite these two sections are provisions for premium charges on which are imprinted the rubber stamp notation "Deleted." Section (c) includes concessions, stands, games and booths. In the charge provision opposite this section the blank space for the insertion of the charge amount is not filled in. Section (d) covers "Grounds Hazard" and establishes a charge of $5 for each $100 of earned premium determined by application of Sections (a), (b) and (c). This is meaningless as (a) and (b) are deleted and (c) is not completed. Next is provision for a deposit premium of $2,000 which is stated to represent "100% of the estimated premium calculated in accordance with the Rating Schedule herein." The intent is obscure because of the noted deficiencies. The rating schedule ends with a provision for a minimum premium of $2,000.

The insuring agreement portion of this endorsement indemnifies the insured against liability "caused by accident occurring during the period of insurance and arising from the operations for which premium is paid in accordance with the Rating Schedule herein." With the rating schedule in the condition mentioned the coverage under the insuring agreement is clouded with doubt.

This endorsement, which we shall refer to as the carnival endorsement, contains the printed provision under the head-

ing "Exclusions" that: "The Company shall not be liable in respect of accidents. occurring whilst the Assured's equipment is in Winter Quarters." It is upon this, exclusion that the insurer bases its claim of no coverage.

The second endorsement in typewritten language provides that the policy covers. liability imposed by law for injuries. "caused by or through the operations of a circus, * * * and * * * caused by any of the paraphernalia used in connection with the Circus." This is followed by the specific exclusion of employees and participants in contests and exhibitions and by an agreement for premium adjustment on the basis of $2.50 per $100 of gross receipts.[1] We shall refer to this endorsement as the circus endorsement.

The unchallenged findings of the trial court are that during the life of the policy and at a time when "the circus operated by plaintiff was in winter quarters. * * * a lioness owned by plaintiff, then on display to the public, pulled the child's right arm into her cage and severely clawed and chewed it."

We are aware of the rules of construction urged by counsel for the insurer but we find them of little help in resolving the controversy, and we are unimpressed by counsels' reconciliation of the policy terms. Every approach to this policy leads to the morass of uncertainty. Assuming that the insuring agreement of the carnival endorsement imposes some liability on the insurer, the exclusions of that endorsement pertain to the hazards. therein covered. The esoteric differences between a carnival and a circus are delineated neither in the policy, the record, nor the briefs. One thing is clear. There must be some difference. Other-

---

1. The typewritten portion of this endorsement reads: "It is agreed that this policy covers the liability imposed by law upon the Assured for damages on account of accidental bodily injury, including death at any time, caused by or through the operations of a circus, including collapse of grandstand, and all injuries that might be caused by any of the paraphernalia used in connection with the

Circus.—It is further agreed that the said policy does not cover injuries to or the death of any person employed by the Assured or participating in any contest or exhibition of any nature whatsoever.—It is agreed that the premium shall be adjustable at a rate of $2.50 per $100.00 of gross receipts from admissions, including reserved seats, admissions to Side Shows, etc."

wise there would be no need for the circus endorsement.

This is not a case of conflict between the face of a policy and an endorsement, in which event the endorsement controls.[2] This dispute arises over two endorsements, one on a printed form and one typewritten. There is uncertainty as to whether the carnival endorsement and the circus endorsement provide for separate coverage. If they do, the insurer is liable as the circus endorsement contains no time and place exclusion. If they do not, then the question is whether the time and place exclusion contained in the printed form of carnival endorsement prevails over the coverage provided in the typewritten circus endorsement. This dilemma, to say nothing of the puzzling policy deletions, deficiencies, and inconsistencies, establishes ambiguity and uncertainty which must be resolved against the insurer on two grounds. The rule is that when written and printed portions of a policy are repugnant, the written clauses will be given effect over the printed.[3] When insurance policy provisions are capable of being construed in two ways, the interpretation which is most favorable to the insured will be adopted.[4]

One further argument of the insurer should be mentioned. It is asserted that the provision for premium adjustment on the basis of gross receipts shows an intent to exclude the period when the circus is in winter quarters because at that period there are no admission receipts. It is a sufficient answer that method of premium adjustment has no relation to risk coverage and that a substantial minimum premium was required and paid.

Affirmed.

LEWIS, Circuit Judge (dissenting).

I cannot agree that this insurance policy was in effect while the circus was admittedly in winter quarters. Although, as my Brother BREITENSTEIN points out, the rating schedules may be clouded by insertion and deletion and much might be said about the difference between a carnival and a circus still the single issue here is whether the exclusionary clause under attack,[1] which is only one of many contained in the printed portion of the policy, is rendered meaningless by typewritten Endorsement No. 1.[2] The endorsement provides in full:

"It is agreed that this policy covers the liability imposed by law upon the Assured for damages on account of accidental bodily injury, including death at any time, caused by or through the operations of a circus, including collapse of grandstand, and all injuries that might be caused by any of the paraphernalia used in connection with the Circus.

"It is further agreed that the said policy does not cover injuries to or death of any person employed by the Assured or participating in any contest or exhibition of any nature whatsoever.

"It is agreed that the premium shall be adjustable at a rate of $2.50 per $100.00 of gross receipts from admissions, including reserved seats, admissions to Side Shows, etc.

---

2. Farmers Ins. Exchange v. Ledesma, 10 Cir., 214 F.2d 495, 498.

3. 13 Appleman Insurance Law and Practice § 7522, p. 249, and see 1961 pocket part, p. 87. Oklahoma follows this rule, Springfield Fire & Marine Ins. Co. v. Dickey, 73 Okl. 57, 174 P. 235, 238, and see Johnston v. Shaffer, 74 Okl. 25, 176 P. 901, wherein the rule was applied to an oil and gas lease.

4. County Fire Ins. Co. of Philadelphia v. Harper, 207 Okl. 359, 249 P.2d 705, 707;

Combined Mut. Cas. Co. v. Metheny, 203 Okl. 522, 223 P.2d 533, 535.

1. "The Company shall not be liable in respect of accidents occurring whilst the Assured's equipment is in Winter Quarters."

2. There is no other endorsement to the policy designated specifically as such. The contract consists of a printed cover sheet with a standard printed Carnival Amusement liability policy attached and Endorsement No. 1 added.

697

"Nothing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements or limitations of the abovementioned Policy, other than as stated above."

The first paragraph of the endorsement supersedes the insuring agreement as contained in the printed portion of the policy. The second paragraph of the endorsement adds an exclusionary feature not contained in the printed portion. The third paragraph affects rates and replaces a deletion in the printed contract. And the final paragraph specifically negatives the intent to vary any other portion of the printed contract. The insured urges that the words "at any time" as contained in paragraph one of the endorsement are not limited in construction to a modification of "death" but create an ambiguity as to time and place of coverage. My Brothers do not give specific approval to such argument but do find ambiguity. I find none.