**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ZURICH NORTH AMERICA,

    Plaintiff - Appellant,

v.

MATRIX SERVICE, INC.,

    Defendant - Appellee.

Nos. 04-5101 and 05-5027

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 02-CV-896-E)**

---

Submitted on the briefs.[*]

Theodore D. Aden and Sheila A. Woolson of Epstein Becker & Green, P.C., Newark, New Jersey, for Plaintiff - Appellant.

Timothy A. Heefner and James L. Gibbs, III of Goolsby Olson & Proctor, P.C., Oklahoma City, Oklahoma, for Defendant - Appellant.

---

Before **EBEL, O'BRIEN** and **TYMKOVICH**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**O'BRIEN**, Circuit Judge.

The present dispute is a diversity action involving Zurich American Insurance Co.'s (Zurich) payment of medical expenses incurred by Enrique Ortiz, a Matrix Service, Inc. (Matrix) employee. Matrix contracted with Zurich to provide stop-loss coverage for medical expenses incurred by eligible Matrix employees for amounts that exceed Matrix's basic coverage. Matrix paid health benefits on behalf of its employee, Ortiz, up to its policy obligation of $205,000 and requested Zurich pay for the remaining medical bills. Zurich issued a check for $196,738.31 to cover the outstanding medical expenses but filed suit in the district court under 28 U.S.C. § 1332, claiming Ortiz was not a qualified employee for whom Zurich should pay medical expenses. The parties filed cross-motions for summary judgment. The district court, applying Oklahoma insurance law, ruled in favor of Matrix. Zurich appealed.[2] We exercise jurisdiction under 28 U.S.C. § 1291, and AFFIRM.

## Background

[2] Zurich filed a subsequent appeal (05-5027) contesting the district court's award of attorney's fees to Matrix. Zurich filed an Amended Unopposed Motion to Consolidate Appeals and Forego Briefing in case number 05-5027 with the understanding that the outcome in the initial appeal would dictate the outcome with respect to the attorney's fees issue. We granted Zurich's motion in an Amended Order on April 1, 2005.

Matrix is a maintenance and construction company based in Tulsa, Oklahoma. It provides health care benefits to its employees through the Matrix Service Group Benefit Plan of June 1, 2001 (the Plan). Matrix hired Health Services, Inc. as a third party administrator to oversee its health insurance claims. Matrix contracted with Zurich, a New York Corporation, to issue a medical stop-loss insurance policy (the Policy) for the period of June 1, 2001, through May 31, 2002. Under the Policy, Zurich pays for covered medical expenses of eligible employees that exceed $150,000 up to $205,000 and then from $260,000 up to a maximum of $850,000.[3] The Policy provides coverage to eligible employees who are defined as individuals who are "covered under the Plan of Benefits." (R. App. at 58.)

The Plan of Benefits is expressly defined as "the self-insured plan of health care benefits that the Employer provides for the benefit of its Employees." (*Id*.) Maxtrix's Plan describes the coverage and employee eligibility requirements for its employees who receive health benefits. The Plan terminates coverage if an employee "is laid-off/terminated at the end of an employer project" and not reassigned to another project within twenty-one days. (*Id*. at 320.) The Policy

---

[3] Under the Plan and Policy, Matrix was responsible for the first $150,000 of any medical claim. Zurich was responsible for the next $55,000. Matrix was then responsible for another $55,000, with Zurich responsible for any additional expenses up to $850,000. Matrix's total responsibility for any claim less than $850,000 was capped at $205,000.

requires Matrix to obtain the written consent of Zurich for any changes to the Plan. However, the Plan grants sole discretion to a Health Benefit Committee to construe the terms of the Plan and determine whether an employee is eligible: "[u]ltimately, the Committee determines whether or not an employee is eligible to participate in the plan in these, and all other circumstances." (*Id.* at 210.)

Enrique Ortiz was employed by Matrix as a craftsman. On July 30, 2001, Ortiz was assigned to the Tesoro Anacortes Project. The project was scheduled to last past August 21, 2001. The project, however, was suspended on August 22, 2001, due to problems at the job site with Tesoro's sour water stripper purification system. Matrix was scheduled to return to the site on September 4, 2001, to continue the work. Ortiz was instructed to remain on standby and be ready to return to the job site on September 4. Prior to September 4, Tesoro notified Matrix that it had not corrected the problem and further postponed work on the project until September 24, 2001. Sometime during the week of September 17, 2001, Tesoro again postponed work on the project and told Matrix that it would have to determine on a week-by-week basis whether the project could resume. The project finally resumed on October 15, 2001, and was completed on January 13, 2002.

Prior to the resumption of work by Matrix, Ortiz was involved in an automobile accident in which he was seriously injured. The accident occurred on

October 11, 2001, approximately 50 days after work on the Tesoro project was initially suspended. Ortiz's medical bills totaled $401,738.31.[4]

The Health Benefit Committee determined that Ortiz was covered under the Plan and eligible to receive benefits. The Committee reasoned that because the Tesoro project had only been suspended, not finished, the twenty-one day lay-off/termination provision did not apply. Because Ortiz had been eligible for benefits prior to the suspension of the Tesoro project and because the project was not finished before he suffered the accident, the Committee determined Ortiz was a covered employee and Matrix must pay Ortiz's medical bills under the Plan and the Policy. It sought payment from Zurich for the remaining medical bills in the amount of $196,738.31.

As allowed by the Policy, Zurich requested documentation from Matrix that it had paid the appropriate premiums for Ortiz and that he was a covered eligible employee. Zurich's underwriter, PERU, notified Zurich of the need to pay the claim promptly in order to take advantage of a medical discount, which it did on May 20, 2002, by issuing a check to Matrix for $196,738.31, while continuing to press for supporting documentation. After some delay, Matrix sent a memo which addressed the request for information regarding premium payments as follows:

---

[4] We derive this number by adding the $205,000 paid by Matrix and the $196,738.31 paid by Zurich.

Evidence of premium payments: For field employees like Ortiz, under circumstances where the employee's need for medical or FMLA leave is unplanned or unexpected, it is Matrix policy and customary practice to pay the contribution to the Group Benefit Plan for the employee until arrangements can be made for contribution payment. Employees are required to re-pay the company for advances of contribution upon return to work.

(R. App. at 84.)[5] During this time, Zurich realized that Ortiz had been suspended from work for approximately fifty days and requested a refund from Matrix. Matrix refused, stating it had correctly interpreted the Plan and offered to "provide [Zurich] documentation concerning Mr. Ortiz' and other employees' continued employment during the time period relevant to this matter." (R. App. at 419-20.) The last document concerning premium payments generated prior to the filing of this lawsuit is a telephone message memo indicating Matrix's claims broker had telephoned regarding Zurich's continued requests for the premium billing statements. The memo concluded, "[the broker] thinks Zurich must be checking eligibility. She will check with the Group [Benefit Committee]." (R. App. at 86.)

On November 25, 2002, Zurich filed a complaint alleging breach of

---

[5] Matrix never provided sufficient evidence to satisfy Zurich that the premiums for Ortiz had been paid despite several requests made by Zurich during the end of 2002. In 2004, Matrix did provide Zurich with an active participant census list which included Ortiz, but the list commences after the date of the accident and Matrix refused to provide any information, including premium billing statements, for the period from August 1 through October 1, 2001, the period when Ortiz was waiting to return to the project.

contract and seeking the return of the $196,738.31. Zurich alleged Matrix's interpretation of the contract constituted an impermissible change in the terms for which adequate notice was not received. Zurich did not allege Matrix had failed to make premium payments. Zurich filed a Motion for Summary Judgment on May 19, 2003.[6] On August 18, 2003, Matrix filed a response and its Cross-Motion for Summary Judgment. The district court denied Zurich's Motion for Summary Judgment and granted Matrix's Cross-Motion for Summary Judgment on June 22, 2004. Judgment was entered on June 23, 2004. Zurich never raised Matrix's failure to provide evidence of premium payments during the pleading, discovery or summary judgment processes.

It appears around the time of the district court's summary judgment decision, Zurich renewed its request for documentation of premium payments from Matrix, specifically an "active [Plan] participant census" as of November 1, 2001, through June, 2002. (R. App. at 87-95.) After receiving that list, on June 29, 2004, Zurich again asked for the premium billing statements for October 1, 2001 through May 31, 2002. One week later, Zurich's underwriter wrote to check on the status of the request and related that Zurich was "asking specifically for the August, September and October 2001 itemized statements." (R. App. at 97.)

---

[6] At the request of the district court, Zurich filed a Supplemental Brief in Support of its Motion for Summary Judgment on June 18, 2003.

Those exchanges were not made through counsel in this case. But on the same day, Zurich's counsel sent a written request to Matrix's counsel for the same documentation, to be provided by July 9, 2004. Matrix's counsel responded the following day stating the timing of the request was unreasonable, but that Matrix "will evaluate your request and respond appropriately, within a reasonable time." (R. App. at 99.) On July 9, 2004, Zurich's counsel again requested the premiums documentation be provided either by fax or production at Matrix's offices no later than July 13, 2004. Zurich advised that if the documents were not received, it would file a motion for an order to show cause asserting that Matrix had misrepresented Ortiz's status as a covered employee because the premiums were not paid for him during those months. On July 12, 2004, Matrix refused to produce the documents, stating that it considered the case resolved pursuant to the summary judgment ruling.

On July 20, 2004, nearly a month after the district court's decision was announced, Zurich filed an Order to Show Cause to Compel Matrix to produce relevant premium documents from October 1, 2001, through May 31, 2002. Zurich also sought relief pursuant to Rule 60(b)(2), (3) and (6) (relief from judgement or order), claiming Matrix's refusal to produce the relevant documentation, as required by contract, required an inference that the documents would prove that Matrix had not paid Ortiz's premiums, and therefore he was not

a covered employee at the time of his accident. On July 22, 2004, the district court denied Zurich's request for relief under Rule 60(b)(2) and (3). It did not specifically address Rule 60(b)(6) or Zurich's request for injunctive relief.

Discussion

Zurich argues the district court erred by denying its summary judgment motion and granting summary judgment to Matrix on the interpretation of the Plan and Policy documents. Zurich also challenges the district court's refusal to grant its request for post-judgment relief premised on Matrix's failure to produce documentation of premium payments for Ortiz. This includes its broad brush requests for a suspension of the judgment, an order compelling production of Matrix's insurance documentation, or a new trial based on the presence of new evidence and/or fraud allegedly committed by Matrix.

**1.    Summary Judgment**

Zurich argues that the district court ignored the plain language of the Plan and Policy by preferring Matrix's interpretation of coverage. Zurich further contends that Matrix's interpretation constituted an impermissible Plan change.[7]

---

[7] Zurich argues the district court somehow impermissibly gave deference to Matrix's interpretation of the Plan and Policy because it mistakenly applied an ERISA standard to the dispute between Zurich and Matrix. (Appellant's Br. at 23-25.) The district court did mention ERISA, but only incidentally. It is clear from the order that the district court applied the appropriate FED. R. CIV. P. 56 standard throughout. The district court only noted "the Court assumes that a sophisticated company such as Zurich would not issue a medical stop-loss policy

(Appellant's Br. at 14.) Matrix argues that its interpretation of the documents is reasonable based on the language, and even if not, Matrix was given the sole power to interpret the provisions of the plan.

A district court's grant of summary judgment under FED. R. CIV. P. 56 is subject to *de novo* review. *Pittman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1295 (10th Cir. 2000). The reviewing court must apply the same standards as the district court. *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999). Summary judgment shall be granted if there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Under Oklahoma law, insurance policies are to be interpreted using the same principles that "apply to any adhesion contract." *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017, 1019 (Okla. 2002).

Parties to a contract for insurance are free to choose the risks to be

---

to cover medical benefits under an ERISA plan without first reading the terms of the plan." (R. App. at 24.) However, the district court never accorded any deference to Matrix because the Plan was an ERISA plan. The only deference accorded to Matrix's interpretation was due to the contractual language which gave the power of interpretation to Matrix and the district court's determination that Matrix provided "the most reasonable construction of the terms of the Plan." (*Id.* at 23.)

covered by the policy. Once agreed upon, the parties are bound by the terms of the contract; and courts will not rewrite those terms. The construction of a policy should be natural and reasonable, viewed in the light of common sense. The result should not be absurd.

*Id*. Moreover, an insurance contract is "to be construed so as to give effect to all of its provisions, if possible, and its terms are accepted in their plain and ordinary sense." *Great Am. Ins. Co. of N.Y. v. O.K. Packing Co.*, 211 P.2d 1014, 1016 (Okla. 1949). Any ambiguity is to be construed strictly against the insurer and in favor of the insured. *Id.*; *see, County Fire Ins. Co. of Phila. v. Harper*, 249 P.2d 705, 707 (1952).

The critical Plan provision in dispute is the "continuous 21-day break" limitation which provides:

> If you are an employee who is laid-off/terminated at the end of an employer project, your coverage will end the last day of work on the project. However, if you are ending an employer project, but are scheduled to begin another employer project within 21 days, your coverage will not be terminated; you will not receive pay for the days you are not working, but you will continue to be considered an active employee with health benefits (if enrolled). If, after a continuous 21-day break, you have not started another employer project, you will be laid-off / terminated at that time, your coverage will cease and you will receive COBRA notification.

(R. App. at 320.) As Zurich points out, this provision states that a "continuous 21-day break" in employment will cause the coverage to lapse. However, this provision is triggered only when "you are an employee who is laid-off /terminated at the *end* of an employer project." (*Id*. (emphasis added).) According to the

-11-

Health Benefits Committee, because the Tesoro project was suspended before completion, Ortiz was not an employee whose project had ended. Thus, according to the Committee, this limitation does not apply.

Three factors weigh in favor of the Health Benefit Committee's interpretation of the "continuous 21-day break" limitation. First, the language of the provision is crafted to apply to an employee being terminated "at the end of an employer project." Certainly, August 21, 2001, the day Ortiz's work on the project was suspended, was not "the end" of the project. Although the project was postponed several times, it was done on a periodic and eventually weekly basis and with the full expectation that work would resume, as it did on October 15, 2001. Thus, the Health Benefit Committee's interpretation that the limitation did not apply is reasonable in light of the Plan language. Had the limitation provided *any* continuous twenty-one day break in work would terminate coverage, Zurich would have a valid argument. But the Plan provision specifically limited coverage termination to twenty-one day breaks after *the end* of a project.

Second, through the Health Benefit Committee, Matrix was specifically granted the sole power to interpret the provisions of the Plan. The Plan provides,

> The Committee shall have the sole discretionary authority to determine eligibility for plan benefits or to construe the terms of the plan, and benefits under the plan will be paid only if the Committee decides, in its discretion, that the participant or beneficiary is entitled to such benefits.

(R. App. at 248.) Because the "continuous 21-day break" limitation was part of the Plan, the Health Benefits Committee had the sole power to interpret its meaning and whether the limitation applied to Ortiz.

Zurich contends that Matrix's authority to interpret the policy was limited to disputes with an employee, not the insurance company. It maintains that Matrix's interpretation of the Plan was actually a revision of the Plan and therefore Matrix was required to submit the changes to Zurich in writing for approval. However, Zurich's attempt to limit Matrix's authority to interpret the contract is not manifest in the contract language. The Policy only provides that Matrix "will not change the Plan of Benefits without the prior written consent of [Zurich]," and if Matrix does not give written notice of the change, Zurich's liability is limited to "the lesser of the new Plan of Benefits or the Plan of Benefits prior to the change." (R. App. at 299.) Both the "continuous 21-day break" limitation as well as the provision granting the Health Benefit Committee the power to interpret Plan provisions were originally in the Plan which was incorporated into the Policy. The Health Benefit Committee did not rewrite or modify the contract provisions. It merely interpreted the Plan's language including any attendant ambiguity as it applied to an employee. Even if Zurich understood the interpretation power to extend only to disputes between Matrix and its employees, Zurich would still be affected and bound by Matrix's decisions

implementing employee benefits.

Finally, under Oklahoma law, the insurance contract is to be construed against the insurer, Zurich. *Great Am. Ins. Co. of N.Y.*, 211 P.2d at 1016; *Harper*, 249 P.2d at 707. Even if the contractual language regarding "the end of an employer project" was ambiguous and Matrix's Health Benefit Committee did not possess the sole power to interpret the contract, Oklahoma's rule of construction would weigh in favor of Matrix. The plain language of the Plan limitation coupled with Matrix's ability to interpret that provision and the Oklahoma rule of construction against the insurer leaves little reason to prefer Zurich's interpretation of Plan coverage over that of Matrix. The district court appropriately granted summary judgment to Matrix and denied it to Zurich.

**2.     Rule 60(b), Federal Rules of Civil Procedure, and Post-Judgment Relief**

One month after summary judgment was entered, Zurich requested several inter-related forms of post-judgment relief based on Matrix's failure to provide evidence to Zurich that it had paid the premiums for Ortiz's insurance coverage as it was obligated to do under the terms of the Policy. Zurich requested the district court to grant relief under FED. R. CIV. P. 60(b); give it an extension of time to appeal from the district court's order; stay the district court's order on summary judgment pending appeal; and issue an order compelling Matrix to produce evidence that it had paid the premiums.

*A. Rule 60(b) Relief*

Zurich filed a request for relief under Rule 60(b)(2),(3) and (6), which provide:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . .
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> . . .
>
> or (6) any other reason justifying relief from the operation of the judgment.
>
> The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment . . . was entered or taken.

The savings clause to Rule 60(b) further provides "[t]his rule does not limit the power of a court to entertain an independent action to . . . set aside a judgment for fraud upon the court."

This Court reviews a district court's denial of a Rule 60(b) motion for abuse of discretion. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000). Rule 60(b) relief "is extraordinary and may only be granted in exceptional circumstances." *Id.* "Parties seeking relief under Rule 60(b) have a

-15-

higher hurdle to overcome because such a motion is not a substitute for an appeal." *Cummings v. General Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004). "Accordingly, our review is meaningfully narrower than review of the merits of a direct appeal." *Amoco Oil Co. v. EPA*, 231 F.3d 694, 697 (10th Cir. 2000) (internal quotation omitted). "Given the lower court's discretion, the district court's ruling is only reviewed to determine if a definite, clear or unmistakable error occurred below." *Cummings*, 365 F.3d at 955 (internal quotation omitted). A reviewing court may reverse only if it finds "a complete absence of a reasonable basis and [is] certain that the . . . decision is wrong." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1232 (10th Cir. 1999) (internal quotation omitted). However, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998) (internal quotation omitted).

1. Rule 60(b)(2)

The district court decided Rule 60(b)(2) was unavailable because Zurich did not possess any newly discovered evidence. At best, Zurich merely suspects the information it seeks would lead to new documentary evidence. Assuming the new evidence would substantiate Matrix's alleged concealment of damaging information, Zurich's motion still fails. For newly discovered evidence to provide

a basis for a new trial under Rule 60(b)(2), the moving party must show "(1) the evidence was newly discovered since the trial; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence [is] material; and (5) that a new trial[] with the newly discovered evidence would probably produce a different result." *Graham v. Wyeth Lab.*, 906 F.2d 1399, 1416 (10th Cir. 1990). Zurich's motion founders on the first two requirements. Although Zurich's attorney represented he did not learn of Matrix's refusal to provide contractually required documentation until after the district court granted summary judgment, Zurich knew the documentation was missing almost a year prior to the start of trial and made no attempt to explicitly include it in the discovery process. **[Order July 22, 2004 at 2]** Thus, the district court correctly determined that Matrix's failure to produce the documents does not qualify as newly discovered evidence and Zurich's abandonment of its requests for the documents for over a year does not demonstrate diligence in discovering the "new" evidence.

2. Rule 60(b)(3)

The district court dismissed Zurich's Rule 60(b)(3) motion because it failed to allege sufficiently egregious conduct to constitute fraud on the court as set forth in *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002). Zurich argues the district court erroneously applied *Buck*'s heightened fraud on the court standard to

-17-

its motion by requiring proof of "intent to deceive or defraud the court," through a "deliberate scheme," *id*. (internal quotation omitted), rather than the lower Rule 60(b)(3) standard for fraud or misconduct between the parties. In support, Zurich cites the Rule 60(b)(3) standards applied by other circuits which do not require evidence of intent to deceive through a deliberate scheme. *See Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (requiring under Rule 60(b)(3) only that the defendant prove by clear and convincing evidence that (1) it has a meritorious defense, (2) the non-moving party engaged in misconduct and (3) the misconduct prevented the moving party from fully presenting its case for claims of fraud); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) (holding "misconduct" under Rule 60(b)(3) does not require proof of intent to deceive).

Rule 60(b)(3) allows a court to relieve a party from a final judgment based on "fraud . . ., misrepresentation, or other misconduct of an adverse party." Regardless of the specific form of the allegation, the party relying on Rule 60(b)(3) must, by adequate proof, clearly substantiate the claim of fraud, misconduct or misrepresentation. *Wilkin v. Sunbeam*, 466 F.2d 714, 717 (10th Cir. 1972). In other words, "they must show 'clear and convincing proof' of fraud, misrepresentation, or misconduct." *Cummings*, 365 F.3d at 955. *See Yapp,* 186 F.3d at 1231*; Anderson v. Dep't of Health & Human Servs.,* 907 F.2d 936, 952 (10th Cir. 1990). Moreover, "the challenged behavior must *substantially* have

interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Woodworker's Supply Inc.*, 170 F.3d at 993 (internal quotation omitted); *Cummings*, 365 F.3d at 955. Subsection (b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect," which may be remedied under subsections (b)(1) or (2). *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

By its terms, Rule 60(b)(3) deals with "fraud . . ., misrepresentation, or misconduct *by an adverse party*," while the savings clause to Rule 60(b) recognizes "the power of a court to entertain an independent action to relieve a party from a judgment . . . for fraud upon the court." *See Wilikin*, 466 F.2d at 717 (recognizing "Rule 60(b) does not limit a court's power to redress fraud on the court."). This distinction allows fraud on the court claims to be brought outside of the one year period of limitations imposed on the grounds expressly listed in Rule 60(b)(3). Ordinarily, therefore, claims of fraud between the parties are brought under Rule 60(b)(3), while claims of fraud on the court are brought as an independent action which is recognized in the savings clause. However, courts have allowed parties to file a claim for fraud on the court under subsection (b)(3). *See Gonzalez v. Secretary for Dept. of Corrections*, 366 F.3d 1253, 1259 (11th Cir. 2004) ("A claim that the State had perpetrated a fraud on the federal court in order to obtain the judgment denying the habeas petition could be raised in a Rule

60(b)(3) motion.") *aff'd by Gonzalez v. Crosby*, 125 S. Ct. 2641 (2005).

Fraud between the parties and fraud on the court are two distinct bases for post-judgment relief. "Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties . . . ." *Buck*, 281 F.3d at 1342. Fraud on the court claims merit separate analysis not only because they are exempt from the one year time-period for filing claims under Rule 60(b)(3), but also because they are much more difficult to prove. *See* 11 Wright & Miller, *Federal Practice and Procedure,* §§ 2860 & 2870 (2d ed.1995).

> Generally speaking, only the most egregious conduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Weese v. Schukman,* 98 F.3d 542, 552-53 (10th Cir. 1996) (internal quotation omitted). *See also, Buck*, 281 F.3d at 1342 ("It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court.") These parameters are strictly applied because a finding of fraud on the court permits the severe consequence of allowing a party to overturn the finality of a judgment. *Weese*, 98 F.3d at 553. Intent to defraud is an "absolute prerequisite" to a finding of fraud on the court. *Robinson v. Audi Aktiengesellschaft,* 56 F.3d 1259, 1267 (10th Cir. 1995) (discussing the required intent element). *See also,*

*Yapp v. Excel Corp.,* 186 F.3d 1222, 1231 (10th Cir.1999) (same).

In this case, Zurich argues that the district court applied the wrong standard due to its reliance on *United States v. Buck*. Zurich contends *Buck* is inapposite because it "did not even concern a motion under Rule 60(b)(3), much less purport to set forth the standard for such a motion . . . ." (Appellant's Br. at 33.) We agree. To be sure, *Buck* was clearly a fraud on the court case, brought to avoid the time bar of Rule 60(b)(3). We specifically referred to the words of Rule 60(b)'s savings clause that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, . . . or to set aside a judgment for fraud upon the court." Our agreement, however, provides cold comfort because in *Yapp*, we applied the heightened fraud on the court standard of *Buck* and *Robinson* to misconduct claims under 60(b)(3).[8] 186 F.3d at 1231. Zurich's allegation of nondisclosure plainly does not meet the requirements of *Yapp*, because it provided no evidence of "an intent to deceive or defraud the court, by means of a deliberately planned and carefully executed scheme." *Id*. (internal quotations omitted).

---

[8] We acknowledge that other circuits have applied a lesser standard. Nevertheless, we, like the district court, are bound by prior panel decisions. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.") (internal citations omitted).

Even were we to apply a less rigorous standard for fraud between the parties under Rule 60(b)(3), Zurich still fails to establish fraud by clear and convincing evidence; its proof consists only of a failure to produce documents. There is no evidence of intent or a deliberate plan or scheme to interfere with Zurich's case. Zurich's bald claim that Matrix's failure to produce the documents "smacks of dishonesty" and "inadvertently or deliberately, creates a false representation to the Court" is conclusory. (Reply Br. at 14, 16.) Allegations of discovery abuses of this kind do not rise to the level of fraud between the parties. This is especially true when, as here, the information was not directly contested in the judicial proceedings and the offending party could reasonably assume the complaining party was aware of the issue. *See Taylor v. Texgas Corp.*, 831 F.2d 255, 259-60 (11th Cir. 1987).

It is true that a failure to disclose requested information during discovery may constitute misconduct under Rule 60(b)(3). *Woodworker's Supply, Inc.*, 170 F.3d at 993; *Cummings*, 365 F.3d at 955. However, this usually requires the violation of a specific discovery request or order. *Id*. Because Zurich never brought the issue before the district court, there was no discovery order in this case compelling the production of the premium payment documents. Zurich argues a violation of a specific request or a court order were unnecessary to prove fraud because Matrix was obligated to disclose the premium payment documents

under Rule 26. While some violations of Rule 26 may constitute misconduct, such violations are clear and deliberate and typically lead to other misconduct such as the introduction of false testimony. *Abrahamsen v. Trans-State Express, Inc.*, 92 F.3d 425, 428-29 (6th Cir. 1996). Here, Matrix's obligation to disclose the premium payment documents under Rule 26 is less than clear. At no time during the pleadings, discovery or the summary judgment motions did Zurich raise the issue of premium payments. While it is arguable that Matrix was obligated to disclose the documents under Rule 26 based on its assertion in its pleadings and cross-summary judgment motion that Ortiz was a "covered employee," it is a stretch. In any event, arguable violations of Rule 26 do not satisfy the clear and convincing evidence of fraud, misrepresentation or misconduct standard. *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880-81 (9th Cir. 2000). The proper remedy for any perceived violation of discovery is to seek redress under Rule 37(a)(2), not to wait until after summary judgment and file a Rule 60(b)(3) motion.

Additionally, it is questionable whether Matrix's failure to produce the documents prior to the dispositive motions truly impaired Zurich's ability to present its case based on the issues it brought before the court. After all, Zurich failed to request the documents during discovery even though it knew of their existence and claimed a contractual right to them. Nor did Zurich file a Rule 56(f)

motion requesting the summary judgment motion be postponed until it could procure them. It was only after Matrix was granted summary judgment that premium payment became an overarching issue. Parties cannot use Rule 60(b) as mechanism to correct their own mistakes after summary judgment has not gone their way.

Given this Court's ruling in *Yapp*, and apart from it, it is impossible to say the district court abused its discretion by relying on *Buck* and denying Zurich's motion for relief under Rule 60(b)(3). There was no discovery request or motion to compel the production of the documents and an absence of direct evidence that Matrix intentionally did not comply with its contractual obligation to supply the documentation because it would show non-payment of Ortiz's premiums.

### 3. Rule 60(b)(6)

Finally, Zurich's Rule 60(b)(6) argument is without merit. "Rule 60(b)(6) relief is even more difficult to attain and is appropriate only 'when it offends justice to deny such relief.'" *Yapp*, 186 F.3d at 1232 (*quoting Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996)). "The denial of a 60(b)(6) motion will be reversed 'only if we find a complete absence of a reasonable basis and are certain that the . . . decision is wrong.'" *Yapp*, 186 F.3d at 1232 (*quoting State Bank of S. Utah v. Gledhill*, 76 F.3d 1070, 1080 (10th Cir. 1996)). Zurich has failed to provide any definite, clear or unmistakable error in the district court's

denial of its Rule 60(b)(6) motion. Zurich provided no additional grounds on appeal other than its fraud claim. As this Court has noted in *Buck*, Rule 60(b)'s categories are mutually exclusive. 281 F.3d at 1341. "The clear import of the language of clause (b)(6) is that the clause is restricted to reasons other than those enumerated in the previous five clauses." *Id.* The district did not address Zurich's Rule 60(b)(6) argument for the simple reason that there was no argument. Parties moving for relief under Rule 60(b) cannot simply throw in subsection (6) without any new arguments and expect to obtain a new trial.

Accordingly, we conclude the district court did not abuse its discretion and its denial of Zurich's Rule 60(b)(2),(3) and (6) motion is affirmed. Because Zurich waived its right for an order to compel and has failed to meet the requirements of Rule 60(b), the district court's refusal to grant a time extension for Zurich to appeal or a stay of judgment pending appeal was appropriate.

*B. Order to Compel Production of Insurance Documents*

Zurich also requested post-judgment relief in the form of a preliminary injunction compelling Matrix to produce the premium payment documents for August to October, 2001. In its supporting brief, Zurich argued that it needed the requested documents "in support of its appeal" from the district court's grant of summary judgment. (R. App. at 43.) On appeal, Zurich points out that Matrix was obligated to provide the requested premium payment documentation under the

contract and therefore, the district court erred by denying its request to compel the production of the documents.

Zurich misapprehends the form and nature of post-judgment relief. Zurich had multiple opportunities before final judgment was entered to involve the district court and obtain the requested premium payment documents. During discovery, Zurich could have filed a discovery request for the payment documents under Rule 26(b)(1) or Rule 34 and moved for an order compelling inspection under Rule 37(a)(2)(B). Alternately, assuming Zurich is correct that Matrix was obligated under the insurance contract to provide the documents and should have disclosed them under Rule 26(a)(1)(B), it could have filed a request to compel production under Rule 37(a)(2)(A). However, Zurich neither requested the documents nor raised Matrix's failure to produce the documents during the discovery phase of its lawsuit.

After discovery concluded, Zurich could have argued Matrix failed to prove in its Motion for Summary Judgment that Ortiz was covered due to Matrix's failure to provide evidence of coverage in the form of premium payment documentation. Or, as pointed out by the district court, Zurich could have filed for a continuance under Rule 56(f) after the summary judgment motions were filed "to permit affidavits to be obtained or depositions to be taken or discovery to be had" in order to alert the district court to the existence of the documents and their

essential nature to the outcome of the case. Zurich did neither.

Instead, Zurich waited until after judgment was entered to file a Rule 60 motion and include a request for a preliminary injunction to compel the production of the documents. However, its request for a preliminary injunction is an attempt to reopen discovery in order to obtain documents it had known about, but failed to request during discovery. This is not recognized under Rule 59 or 60 as a grounds for reopening the judgment. Like the district court, we are "disturbed by the timeliness of Zurich notifying the [district c]ourt of this issue." (R. App. at 14.) Zurich should have exercised diligence by complaining *before* the court reached a decision. *See Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084 (10th Cir. 2005) ("Courts have refused to allow a postjudgment amendment when, as here, the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave."). Zurich's request for a preliminary injunction is merely an attempt to conduct discovery for a second time and litigate a different case on appeal than it did in the district court. Concern for finality counsels against allowing requests for preliminary injunctions aimed at discovering documents after judgment is entered.

## Conclusion

We AFFIRM the district court's grant of summary judgment to Matrix, as well as its denial of summary judgment to Zurich. We also AFFIRM the district court's

denial of Zurich's motions for post-judgment relief.

Pursuant to our Amended Order of April 1, 2005, the district court's award of attorney's fees to Matrix in case number 05-5027 is also AFFIRMED.