FIRST NATIONAL BANK AND TRUST COMPANY OF WILLISTON, Plaintiff and Appellee,

v.

Pius SCHERR, Defendant and Appellant,

and

Albinus Scherr individually and d/b/a Scherr & Scherr, a general partnership, Defendants.

Civ. No. 890356.

Supreme Court of North Dakota.

June 1, 1990.

Kent A. Reierson of Winkjer, McKennett, Stenehjem, Murphy & Reierson, Williston, for plaintiff and appellee.

John T. Gassmann, Valley City, for defendant and appellant.

VANDE WALLE, Justice.

Pius Scherr appealed from a district court order denying his motion for relief from a judgment and his motion to amend his answer. We reverse and remand for further proceedings.

The factual background of this case is stated in *First National Bank & Trust Co. v. Scherr*, 435 N.W.2d 704 (N.D.1989) [*Scherr I*] and will be repeated to the extent necessary to decide the issues in this appeal. On April 29, 1983, the First National Bank & Trust Company of Williston obtained a short-term mortgage, executed in the name of "Scherr and Scherr, A General Partnership," and signed by Pius and Albinus Scherr. The mortgage covered property upon which the Scherrs planned to construct a Famous Recipe Chicken store and secured "various notes of various dates herewith, as follows: The total of these notes to equal $100,000.00." Between May 2, 1983 and August 8, 1983, Pius, on behalf of Scherr and Scherr, executed four promissory notes with the Bank totaling $100,000. Each note stated that it

was secured by the April 29, 1983 mortgage. On October 26, 1983, Pius and Albinus executed another mortgage on the same property and a promissory note for $100,000. That promissory note stated that it was secured by the October 26, 1983 mortgage and that it renewed the four previous notes.

On October 27, 1983, Pius executed another promissory note with the Bank for $65,000 [$65,000 note] for the "[f]inal construction on Famous Recipe Chicken." Only Pius signed the note, and it did not refer to a real estate mortgage or other security.

Pius and Albinus defaulted on the October 26, 1983 $100,000 note and on the $65,000 note. The Bank brought a foreclosure action against Pius and Albinus, d.b.a. Scherr & Scherr, on the October 26, 1983 mortgage and on the $100,000 note and obtained a foreclosure judgment on the Famous Recipe Chicken property. The Bank then sued Pius and Albinus, individually and d.b.a. Scherr & Scherr, to recover on the $65,000 note, contending that Pius and Albinus were personally liable for the balance due on that note. The defendants answered, contending that the $65,000 note was secured by a real estate mortgage and therefore the anti-deficiency judgment statutes precluded the Bank from suing on the $65,000 note after it had foreclosed upon the mortgage.

The trial court granted summary judgment for the Bank. In *Scherr I*, we affirmed the summary judgment against Pius, concluding that the $65,000 note unambiguously indicated that it was unsecured and therefore extrinsic evidence of the intent of the parties was not permissible. We reversed and remanded the summary judgment against Albinus and the partnership, concluding that disputed issues of material fact existed concerning Pius's authority to obligate the partnership to pay unsecured notes.

After additional discovery in the Bank's action against Albinus and the partnership, Pius moved for relief from the summary judgment under Rule 60(b), N.D.R.Civ.P., on the grounds of newly discovered evidence and the Bank's neglect in producing documents in response to requests for production. Pius asserted that the following evidence and documents which were provided by the Bank after *Scherr I* indicated that the parties intended the $65,000 note to be secured by the April 29, 1983 mortgage: the April 29, 1983 mortgage; the deposition testimony of the Bank's president, Duane Sorenson, that he intended the mortgage to sweep up all construction advances made by the Bank to build the Famous Recipe Chicken store; and the direct loan worksheets for the $65,000 note indicating a loan classification of "type 25" for "real estate."

Pius also moved to amend his answer to include counterclaims for "breach of contract", "breach of a fiduciary duty", and "negligent misrepresentation". Pius essentially alleged that the parties intended the $65,000 note to be secured by the April 29, 1983 mortgage, and he sought an offsetting judgment of $99,000.

The trial court concluded that the $65,000 note unambiguously indicated that it was unsecured and that extrinsic evidence of the intent of the parties was not permissible. The court concluded that the newly discovered evidence was "extrinsic, cumulative, and inadmissible" and was "[n]ot of a nature to produce a different result." The court thus concluded that Pius failed to show good cause under Rule 60, N.D.R. Civ.P., to vacate the judgment and denied Pius's motions. He has appealed.[1]

---

1. In his appellate brief to this court, Pius acknowledged that he had filed for bankruptcy after he filed his notice of appeal. After oral argument in this court, the parties filed an order from the bankruptcy court lifting the automatic stay of the bankruptcy code [11 U.S.C. § 362] for the purpose of this appeal. *See Binek v. Ziebarth*, 452 N.W.2d 327 (N.D.1990).

Additionally, there are remaining claims by the Bank against Albinus and the partnership in this action. In that situation, a certification under Rule 54(b), N.D.R.Civ.P., is ordinarily necessary to confer jurisdiction on this court. *E.g., Peterson v. Zerr*, 443 N.W.2d 293 (N.D. 1989). In this case, the trial court, in response to a query as to whether or not the remaining claims against Albinus and the partnership had

Pius contends that he is entitled to relief from the judgment under Rule 60(b)(ii) and (iii), N.D.R.Civ.P.[2] He argues that the newly discovered evidence indicates that, when the Bank obtained the October 26, 1983 mortgage, it kept the April 29, 1983 mortgage in place to retain priority over other lien claimants and that the Bank's president, Sorenson, intended the earlier mortgage to "sweep up" and secure all construction advances to build the Famous Recipe Chicken property. He contends that Sorenson's "thinking" and the failure to satisfy the April 29, 1983 mortgage coupled with the "type 25" notation for "real estate" on the direct loan worksheet for the $65,000 note raises an inference that the note was a construction advance on the Famous Recipe Chicken property and was secured by the April 29, 1983 mortgage. Pius contends that his argument in the prior appeal was based upon his erroneous understanding that the October 26, 1983 mortgage secured the $65,000 note when in fact the Bank intended that note to be secured by the April 29, 1983 mortgage. He thus argues that summary judgment against him was improper because there were disputed issues of material fact regarding the intent of the parties.

A motion for relief from a judgment under Rule 60(b), N.D.R.Civ.P., is addressed to the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Federal Land Bank of St. Paul v. Bagge*, 394 N.W.2d 694 (N.D.1986). We have defined an abuse of discretion as an unreasonable, arbitrary, or unconscionable attitude by the trial court. *Id.*

Although it is clear that Pius did not exercise due diligence to discover all of the

asserted "newly discovered evidence" and that some of the evidence was not newly discovered [*Erdahl v. Hegg*, 110 N.W.2d 355 (N.D.1961) [Evidence which could have been discovered by disclosure proceeding is not newly discovered evidence]], it is also clear that the Bank did not provide Pius with the direct loan worksheet for the $65,000 note before our decision in *Scherr I* and that the worksheet was within the scope of his request for production of documents.

 The failure to disclose or produce materials within the scope of a discovery request or order constitutes "misconduct" within the meaning of Rule 60(b)(3), F.R. Civ.P.[3] *Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir.1988); *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir.1978). In order to constitute "misconduct," the failure to disclose need not be intentional. *Anderson, supra.* The moving party must first demonstrate "misconduct" by clear and convincing evidence and must then show that that "misconduct" prevented the losing party from fully and fairly preparing or presenting its case. *Rozier, supra.* Unlike Rule 60(b)(2) which has been construed to require the newly discovered evidence to be such that it would probably change the result, Rule 60(b)(3) has not been construed to require the withheld information to be of a nature as to alter the result. *Anderson, supra; Rozier, supra.* Instead, the focus is on whether or not the withheld information prevented the losing party from fully and fairly preparing or presenting its case.

 The Bank does not dispute that it failed to produce the direct loan worksheet

---

been severed, indicated that those claims were not against Pius and remained on the "front burner for trial." Whether we treat the trial court's statement as a Rule 54(b) certification [*Vorachek v. Citizens State Bank of Lankin*, 421 N.W.2d 45 (N.D.1988) ], or as a severance of the action against Pius under Rule 21, N.D.R.Civ.P., [*Federal Land Bank of Saint Paul v. Wallace*, 366 N.W.2d 444 (N.D.1985) ], this appeal is properly before us.

2. Rule 60(b)(ii) and (iii), N.D.R.Civ.P., provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment or order

in any action or proceeding for the following reasons: ... (ii) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (iii) fraud (whether denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

3. Rule 60(b)(iii), N.D.R.Civ.P., is identical to Rule 60(b)(3), F.R.Civ.P., and we may look to relevant federal caselaw construing the federal rule for guidance in construing our rule. *E.g., Gajewski v. Bratcher*, 240 N.W.2d 871 (N.D. 1976).

until after *Scherr I* was decided and does not dispute that the worksheet was within the scope of Pius's request for production. We therefore conclude that the evidence clearly and convincingly establishes that the Bank failed to produce the direct loan worksheet and that the Bank's failure to produce constitutes "misconduct" within the meaning of Rule 60(b)(iii), N.D.R.Civ.P.

Our next inquiry is whether or not the nondisclosure prevented Pius from fully and fairly preparing or presenting his case. In *Scherr I*, Pius's argument was that the $65,000 note was ambiguous as to whether it was secured by the October 26, 1983 mortgage. In this case, his argument is that the $65,000 note was a construction advance which was secured by the April 29, 1983 mortgage which stated that it secured "various notes of various dates herewith, as follows: The total of those notes to equal $100,000.00." The worksheet indicates that the $65,000 note was "type 25" which meant "real estate" and supports Pius's theory in this case. Although the Bank asserts that the notation on the worksheet "would not necessarily mean the collateral was real estate", whether the worksheet, by itself, is cumulative or irrelevant misconstrues its significance because it could have led to the timely discovery of the intent of the Bank's president, Sorenson, as well as the Bank's decision to keep the April 23, 1983 mortgage in place.

There is evidence to support Pius's argument that the $65,000 note was secured by the April 23, 1983 mortgage and did not reflect the intent of the parties because of a mutual mistake, or a mistake by Pius which the Bank knew about. Fraud, mutual mistake, or unilateral mistake by one party about which the other party knows are grounds for reformation of a written contract under Section 32–04–17, N.D.C.C.[4] Although extrinsic evidence may not be used to contradict the clear and unambig-

uous language of a contract [*Production Credit Ass'n of Fargo v. Foss*, 391 N.W.2d 622 (N.D.1986) ], extrinsic evidence is admissible in an action to reform a written instrument. *Ell v. Ell*, 295 N.W.2d 143 (N.D.1980). Extrinsic evidence is admissible not only to establish the alleged mistake but also to correct the instrument to conform to the intention of the parties. *Id.* Although in *Scherr I* we held that the $65,000 note was clear and unambiguous on its face and therefore extrinsic evidence was not permissible to contradict the clear and unambiguous terms of that note, nevertheless extrinsic evidence is permissible to show that the note did not reflect the true intent of the parties because of fraud, a mutual mistake, or a unilateral mistake by Pius which the Bank knew about. *Id.* The intent of the parties is a question of fact which is inappropriate for summary judgment and the party who seeks reformation must clearly and convincingly prove that the written contract does not state the intent of the parties. *Id.*

The worksheet may have been the catalyst for an entirely different approach to this case in which the evidence of the intent of the parties would be admissible. Under these circumstances, we conclude that the failure to disclose the worksheet prevented Pius from fully and fairly preparing or presenting his case. We therefore conclude that the trial court abused its discretion in denying Pius's motion to vacate the judgment.

We reverse the order of the district court and remand for proceedings consistent with this opinion with leave for Pius to amend his answer.[5]

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice, concurring specially.

I join in this opinion only because we are dealing with summary judgment and not a

---

**4.** Section 32–04–17, N.D.C.C., provides:
 "*Revision of contract for fraud or mistake.*— When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to

express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value."

**5.** Although we express no opinion about the sufficiency of Pius's proposed amended pleading, we note that it alleges specific facts to state either a mutual mistake by the parties or a

trial on the merits. I agree that the work sheet should have been disclosed and was not. Whether this nondisclosure constitutes misconduct depends on whether it prevented Pius from fully and fairly preparing or presenting his case. Pius could have deposed the bank president and learned of his "feeling" that the $65,000 note was to be secured by the first mortgage. He didn't and were we reviewing a post-trial motion, I would affirm the trial court's decision on the ground that other discovery would have revealed the same facts that the nondisclosed work sheet failed to reveal. But because summary judgment has been traditionally disfavored [though this trend, I believe, has softened, *see, e.g., First Nat'l Bank & Trust Co. of Williston v. Jacobsen,* 431 N.W.2d 284 (N.D.1988); *Gress v. Kocourek,* 427 N.W.2d 815 (N.D.1988); *Northwestern Federal Savings & Loan Ass'n of Fargo v. Biby,* 418 N.W.2d 786 (N.D.1988); *Federal Land Bank of St. Paul v. Asbridge,* 414 N.W.2d 596 (N.D.1987); *Production Credit Ass'n of Fargo v. Foss,* 391 N.W.2d 622 (N.D.1986) ], I agree Pius should have a go at the merits of the case.

Construing Pius' proposed amended pleading as one for "reformation" is, of course, being kinder and gentler than even the author of that exhortation could have anticipated, but in light of the sound policy undergirding Rule 60(b)(3) and in light of our bias against summary judgment in general and nondisclosure in particular, I concur.

unilateral mistake by him about which the Bank knew. Although Pius's prayer for relief did not specifically request reformation, his breach of contract claim sought "such other and further relief as [the] Court may deem just and proper." Although the parties may not have requested an equitable remedy, a district court has equitable jurisdiction to provide a remedy where none exists at law whenever the pleadings sufficiently give notice of the party's right to relief and demand for judgment. *Harrington v. Harrington,* 365 N.W.2d 552 (N.D.1985); *A & A Metal Bldgs. v. I–S, Inc.,* 274 N.W.2d 183 (N.D.1978).

We also note that allegations of specific facts indicating a mutual mistake or a unilateral mistake about which the other party knew may be sufficient to make reformation an issue. *Smith v. Bear,* 237 F.2d 79 (2d Cir.1956); *Roeder v. Roeder,* 118 Cal.App.2d 572, 258 P.2d 581 (1953); *Nab v. Hills,* 92 Idaho 877, 452 P.2d 981 (1969); *see* 76 C.J.S., Reformation of Instruments, § 75 (1952); *see MacMaster v. Onstad,* 86 N.W.2d 36 (N.D.1957) [pleadings which did not seek reformation or allege specific facts entitling the pleader to reformation were insufficient].