#25048-rev & rem-SLZ

**2010 SD 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JEANINE CORCORAN,                                    Plaintiff and Appellee,

      v.

DAVID CHARLES MCCARTHY
and KEMPS, LLC, d/b/a KEMPS
DAIRY PRODUCTS,                                      Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MERTON B. TICE, JR.
Judge
* * * *

STEVEN C. BEARDSLEY
BRAD J. LEE of
Beardsley, Jensen and Von Wald, Prof. LLC      Attorneys for plaintiff
Rapid City, South Dakota                       and appellee.


EDWIN E. EVANS
TIMOTHY M. GEBHART of
Davenport, Evans, Hurwitz & Smith, LLP
Sioux Falls, South Dakota


DONALD A. PORTER
STEPHEN C. HOFFMAN of
Costello Porter Hill Heisterkamp
  Bushnell & Carpenter, LLP                     Attorneys for defendants
Rapid City, South Dakota                       and appellants.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 5, 2009

OPINION FILED **01/27/10**

#25048

ZINTER, Justice

[¶1.]        Jeanine Corcoran was injured in an automobile accident caused by David McCarthy.  Corcoran brought suit against McCarthy and his employer (collectively McCarthy) for chronic pain, mental anguish, and loss of enjoyment of life.  Following a jury award of substantial damages, McCarthy discovered that Corcoran had failed to disclose and produce requested medical records relating to treatment she had received for preexisting psychological problems.  McCarthy moved for relief from the judgment, contending that Corcoran's failure to disclose deprived him of his ability to fully and fairly prepare or present a defense to Corcoran's claim for damages relating to loss of enjoyment of life and emotional distress.  The circuit court granted the motion and ordered a new trial on damages.  On reconsideration, the order granting a new trial was vacated.  McCarthy appeals.  We reverse and remand for reinstatement of the order granting a new trial on damages.

*Facts and Procedural History*

[¶2.]        On January 4, 2005, Corcoran was turning into her driveway when McCarthy, who was unable to stop on a snow-covered hill, struck her vehicle.  She filed suit in November 2006, alleging chronic back pain that caused mental anguish and diminishment of her ability to enjoy the ordinary pursuits of life.

[¶3.]        McCarthy served a request to produce Corcoran's medical records.  The request not only included medical records generated in connection with the accident, but "any and all medical records of any medical treatment received by [Corcoran] from any medical practitioner for a 10-year period prior to the accident

-1-

in question." Corcoran responded: "See attached medical records" and, "We will endeavor to locate and divulge."

[¶4.] During Corcoran's deposition, defense counsel learned that in 2003, Corcoran had been in therapy with a counselor. Those medical records had not been disclosed or produced. Corcoran's counsel represented that the counseling only related to problems Corcoran was encountering raising her son, who had special needs. Corcoran's counsel also represented that the records did not have anything to do with this litigation. Following a discussion, McCarthy's counsel requested that the records be produced. Corcoran's counsel responded: "We'll get you a copy." After nearly a year, Corcoran's counsel had not produced the 2003 records, and McCarthy renewed his request for production. Corcoran's counsel then declined production claiming that the records were not relevant and would not lead to relevant information. Corcoran's counsel later relented and produced the 2003 records.

[¶5.] The subject of this appeal involves similar 2000 and 2006 psychological treatment records that Corcoran's counsel possessed but never disclosed or produced. These undisclosed records first came to light when Corcoran moved for disbursements after trial. The motion for disbursements sought recovery of the cost of obtaining copies of the records. The motion reflected the undisclosed records had been provided to Corcoran's counsel by Dr. R.P. Renka, a medical doctor with Black Hills Psychiatry Associates. The records documented therapy provided by psychologists Thomas G. Terry and Roberta Kramlich under Dr. Renka's

supervision.[1] The records reflected that Corcoran – who was described by her witnesses at trial as "energetic," "enthusiastic," and with "emotional stability" prior to the accident – had been in therapy twenty-four times between February and August 2000 (before the accident), and on four occasions in 2006 (after the accident). The psychologists treated Corcoran for chronic depression, anxiety, panic attacks, and other problems Corcoran had been experiencing relating to her son and problems at school. Although the post-accident records reflect a variety of complaints, and although a major portion of Corcoran's trial damages was based on a claim of chronic back pain from the accident that would require lengthy and costly treatment, the 2006 records make no reference to chronic back pain. They only reflect one passing notation to Corcoran having received an epidural for back pain.

[¶6.] Because Corcoran disclosed shortly before trial that she was seeking damages for an extensive future course of treatment for chronic pain, McCarthy requested that Corcoran undergo an independent medical examination (IME). The request was based on Corcoran's disclosed medical records and McCarthy's expert, Dr. Neil Pitzer. Dr. Pitzer opined that: (1) preexisting depression and fatigue were likely complicating factors in Corcoran's pain complaints, (2) those conditions were not related to the motor vehicle accident, and (3) it was likely that Corcoran's ongoing pain complaints were related to these preexisting conditions. The circuit court denied the request for an IME because, in the court's view, the disclosed

---

1. Although the record suggests that Dr. Renka was most probably a psychiatrist, we cannot confirm or dispel that fact from the record. There is, however, no question that he was a medical doctor who was supervising the psychologists that were treating Corcoran in 2000 and in 2006.

medical records did not indicate that Corcoran had been diagnosed with depression by a psychologist or psychiatrist.

[¶7.]     At approximately the same time, Corcoran moved to preclude Dr. Pitzer from testifying that her preexisting depression and anxiety were a cause of her pain complaints. She further moved to prevent the defense from "mentioning any evidence, arguments, references, testimony or other evidence, concerning any psychological condition" of Corcoran without an expert in psychology. The court granted the motions because again, based on its review of the disclosed records, the court observed "no evidence to support . . . a diagnosis of depression . . . anxiety, or panic disorders." The court stated:

> I have looked at the medical reports upon which the doctor will be testifying.[2] There's no evidence to support that there has been a diagnosis of depression. There is no evidence to support there is anxiety or panic disorders. . . . There is no diagnosis of depression that I can see. . . . You can reference the fact that she was taking Zoloft, but you cannot reference the fact that she was taking Zoloft because she was depressed.

When McCarthy then inquired whether this ruling would permit Dr. Pitzer to give his opinions regarding depression and how it affected Corcoran's claim of chronic pain, the court ruled:

> You can talk about the medical records pre-accident as long as you don't discuss diagnoses of depression, anxiety, or manic disorders. They have not been diagnosed. They were referenced

---

2.    Corcoran had provided medical records from three physicians that mentioned pre-existing depression and anxiety and the use of anti-depressant medication, including Zoloft, Wellbutrin, and Prozac. Corcoran also produced a psychological evaluation from Dr. Dewey Ertz, who evaluated Corcoran after the accident for a possible closed-head injury.

as possibilities, but they were not diagnoses from which [Dr. Pitzer] is capable of drawing a conclusion in my view.

[¶8.]     At trial, Corcoran's requested damages were substantially based on her claim of chronic pain causing mental anguish and loss of enjoyment of life. She also introduced evidence of mental difficulties allegedly caused by the accident. The principal at Corcoran's school testified that one of the biggest changes in Corcoran after the accident was in "emotional stamina." Another co-worker suggested Corcoran was suffering depression caused by the accident: that "there was some depression after the accident."

[¶9.]     Corcoran successfully proposed a jury instruction allowing damages for "mental anguish, and loss of capacity of the enjoyment of life." She then argued that her loss of enjoyment of life was "the question." Corcoran told the jury that her "passion [was] teaching" and that *the accident* had taken that passion from her. Counsel argued:

> She loves it . . . . We all have our passions. [McCarthy has] robbed the joy from that passion. [McCarthy] has taken that from her. She'll never have it again. The rest of her life is different. It's painful and there is incredible loss of enjoyment of life[.]

Although McCarthy's defense was that unrelated depression was a contributing cause of the pain complaints, Dr. Pitzer's testimony was restricted and impeached. Corcoran argued that Dr. Pitzer was a "hired gun" whose examination only included a review of Corcoran's medical records.

[¶10.]     The jury returned a verdict of $580,000. Because the 2000 and 2006 medical records had been formally requested but not disclosed or produced until after trial, McCarthy moved for relief from the judgment under SDCL 15-6-60(b)(3).

McCarthy contended that Corcoran's failure to produce was "misconduct" by an adverse party within the meaning of the statute. McCarthy further contended that the failure to produce prevented him from fully and fairly preparing or presenting his defense. The circuit court granted the motion and ordered a new trial on damages.

[¶11.]       Corcoran moved to reconsider. Upon reconsideration, the circuit court vacated its order for new trial. The court's formal order reflects its decision was based on the following factors:

- Plaintiff's failure to produce the psychological records was not the type of conduct that "defiled the court itself."
- There was no court order compelling production of the records.
- There was no evidence Plaintiff was ever treated by a psychiatrist for her depression-like symptoms.
- There was never an apparent diagnosis of depression in the records.
- The records were of very limited value to the issues relevant at the trial.

[¶12.]       On appeal, McCarthy contends that the circuit court abused its discretion by applying incorrect legal standards. He also contends that there was a diagnosis of depression in the undisclosed records making them extremely relevant. He finally contends that he was prevented from fully and fairly preparing and presenting his defense on damages.

*Decision*

[¶13.]       The decision to grant or deny a Rule 60(b) motion rests within the sound discretion of the circuit court and will not be disturbed on appeal except for an abuse of discretion. Hrachovec v. Kaarup, 516 NW2d 309, 311 (SD 1994). "The trial court's discretion is to be exercised liberally in accord with legal and equitable

principles in order to promote the ends of justice." Williams Serv. v. Sherman, 492 NW2d 122, 125 (SD 1992). Further, a mistake of law constitutes an abuse of discretion. Hawkins v. Kennedy, 79 SD 33, 36, 107 NW2d 340, 341 (1961). Therefore, a trial court "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law" regarding a Rule 60(b) motion. Zurich N. Am. v. Matrix Serv., Inc., 426 F3d 1281, 1289 (10thCir 2005).

[¶14.] SDCL 15-6-60(b) governs relief from judgments. The rule provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> . . .
> (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; [or]
> . . .
> (6) Any other reason justifying relief from the operation of the judgment.
> . . .
> Section 15-6-60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court.

"The purpose of Rule 60(b) is 'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.'" Elliot v. Cartwright, 1998 SD 53, ¶ 7, 580 NW2d 603, 604 (citation omitted).

*The Legal Standards*

[¶15.] McCarthy first argues that the circuit court abused its discretion in denying a new trial on damages because the court applied the wrong legal standard:

a standard requiring that the failure to produce must have defiled the court itself. Corcoran responds that this is the standard for relief under SDCL 15-6-60(b)(3), and McCarthy can not meet that standard because Corcoran's failure to disclose was unintentional. Although McCarthy did not argue that Corcoran's failure to produce was intentional, we agree that the court erred as a matter of law in requiring a "defiled the court" showing when considering relief for "misconduct" by an adverse party under SDCL 15-6-60(b)(3).

[¶16.]     McCarthy's motion was not premised on allegations of fraud, misrepresentation, or other intentional act. He sought relief for non-intentional "misconduct." *See* SDCL 15-6-60(b)(3) (authorizing relief for "fraud, misrepresentation *or other misconduct* of an adverse party") (emphasis added). To obtain relief on this ground, McCarthy was not required to meet the circuit court's "defiling the court" standard. That standard is usually applied when there is a "fraud upon the court" within the meaning of the savings clause of SDCL 15-6-60(b).

> 'Fraud upon the court' [within the meaning of the savings clause] should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud Inter partes, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action.

Gifford v. Bowling, 86 SD 615, 624, 625, 200 NW2d 379, 384 (1972) (citations omitted). Thus, we have recognized that even though a nondisclosure by an adverse party may not constitute a fraud upon the court, it is sufficient to obtain relief under SDCL 15-6-60(b)(3). *Williams Serv.*, 492 NW2d at 126-27. We therefore

conclude that the circuit court abused its discretion in applying the "defiled the court" standard.

[¶17.] The circuit court also implicitly required that the non-produced materials must have been ordered to be produced. This reasoning fails to recognize that once a formal request for discovery has been made, counsel has a continuing duty to supplement. SDCL 15-6-26(e). The absence of an order compelling production also fails to account for the reason why there was no order to produce in this case: the existence of the 2000 and 2006 records was not disclosed until after trial. Consequently, McCarthy had no basis to move for an order to compel production. Therefore, the court also abused its discretion in requiring an order to produce the records.

*Establishing Misconduct Under Rule 60(b)(3)*

[¶18.] We have not addressed what is required to establish misconduct of an opposing party under SDCL 15-6-60(b)(3). Corcoran urges us to adopt the minority view that misconduct in failing to disclose or produce must be intentional. *See, e.g.*, *Zurich*, 426 F3d 1281; Yapp v. Excel Corp, 186 F3d 1222, 1231 (10thCir 1999). We do not find these authorities persuasive. Although *Zurich* involved a failure to disclose under Rule 60(b)(3), the specific allegation involved fraud. 426 F3d at 1290. Further, *Zurich*, the later of the Tenth Circuit opinions, implicitly acknowledged that its circuit's higher requirements may have been worthy of reconsideration. Although acknowledging that its sister circuits applied a lower standard, *Zurich* indicated that it was bound by two prior panel decisions. *Id*. at 1292 n8. Finally, even under the Tenth Circuit's standards, a failure to produce may constitute

misconduct in cases like this where there is a "violation of a specific discovery request or order." *Id.* at 1292. We therefore decline Corcoran's request to adopt the Tenth Circuit's requirements for establishing misconduct.

[¶19.] The better view, adopted in a leading First Circuit case, explains why, when fraud is not alleged, a majority of courts have concluded that misconduct in failing to disclose or produce may be careless, accidental, or even innocent under Rule 60(b)(3):

> Failure to disclose or produce materials requested in discovery can constitute "misconduct" within the purview of this subsection. *See Rozier v. Ford Motor Co.,* 573 F2d 1332, 1339 (5thCir 1978). "Misconduct" does not demand proof of nefarious intent or purpose as a prerequisite to redress. For the term to have meaning in the Rule 60(b)(3) context, it must differ from both "fraud" and "misrepresentation." Definition of this difference requires us to take an expansive view of "misconduct." The term can cover even accidental omissions-elsewise it would be pleonastic, because "fraud" and "misrepresentation" would likely subsume it. *Cf. United States v. One Douglas A-26B Aircraft,* 662 F2d 1372, 1374-75 n 6 (11thCir 1981) (to avoid redundancy, "misrepresentation" in Rule 60(b)(3) must encompass more than false statements made with intent to deceive). We think such a construction not overly harsh; it takes scant imagination to conjure up discovery responses which, though made in good faith, are so ineptly researched or lackadaisical that they deny the opposing party a fair trial. Accidents-at least avoidable ones-should not be immune from the reach of the rule. Thus, we find ourselves in agreement with the Fifth Circuit that, depending upon the circumstances, relief on the ground of misconduct may be justified "whether there was evil, innocent or careless, purpose." *Bros. Inc. v. W.E. Grace Manufacturing Co.,* 351 F2d 208, 211 (5thCir 1965), *cert. denied,* 383 US 936, 86 SCt 1065, 15 LEd2d 852 (1966).

Anderson v. Cryovac, Inc., 862 F2d 910, 923 (1stCir 1988). North Dakota has adopted this view. It has also summarized the showing necessary to establish that

a failure to disclose or produce constitutes misconduct within the meaning of Rule
60(b)(3):

> The moving party must first demonstrate "misconduct" by clear
> and convincing evidence and must then show that that
> "misconduct" prevented the losing party from fully and fairly
> preparing or presenting its case. *Rozier, supra. . . .* Rule
> 60(b)(3) has not been construed to require the withheld
> information to be of a nature as to alter the result. *Anderson,
> supra; Rozier, supra.* Instead, the focus is on whether or not the
> withheld information prevented the losing party from fully and
> fairly preparing or presenting its case.

First Nat'l Bank and Trust Co. of Williston v. Scherr, 456 NW2d 531, 533 (ND
1990). We adopt the majority view[3] and North Dakota's summary of the showing
necessary to establish misconduct in failure to disclose or produce.

[¶20.]     In this case, McCarthy produced clear and convincing evidence of
misconduct in failing to disclose and produce. There is no dispute that Corcoran
failed to disclose or produce specifically requested medical records that had been in
her counsel's possession for eighteen months before trial. Furthermore, the

---

3.     *See also* Schultz v. Butcher, 24 F3d 626, 630 (4thCir 1994) ("[A]n adverse
       party's failure, either inadvertent or unintentional, to produce such obviously
       pertinent requested discovery material in its possession is misconduct under
       the meaning of Rule 60(b)(3)."); Jones v. AeroChem Corp., 921 F2d 875, 879
       (9thCir 1990) (quoting *Anderson*); Catskill Devel., L.L.C. v. Park Place
       Entm't Corp., 286 FSupp2d 309, 314 (SDNY 2003) ("[E]ven an accidental
       failure to disclose or produce materials requested in discovery can constitute
       'misconduct' within the purview of Rule 60(b)(3)."); MMAR Group, Inc. v. Dow
       Jones & Co., Inc., 187 FRD 282, 285 (SDTex 1999) (quoting *Anderson*);
       Outback Steakhouse of Florida, Inc. v. Markley, 856 NE2d 65, 73 (Ind 2006)
       ("[W]e readily conclude that 'misconduct' under Indiana's Rule 60(b)(3) can
       include both negligent and intentional violations of Indiana's discovery
       rules."); Norwest Bank (MN) v. Symington, 197 Ariz 181, ¶ 21, 3 P3d 1101,
       1106 (ArizCtApp 2000) ("We therefore hold that a failure to disclose evidence
       that may be relevant, regardless of whether the disclosure was required by a
                                                              (continued . . .)

requested records were not disclosed or produced at a critical time when the circuit court was considering McCarthy's request for an IME and Corcoran's request to restrict Dr. Pitzer's trial testimony regarding depression. In ruling on both issues, the circuit court was concerned whether Corcoran had been examined by any "psychologist or psychiatrist or anyone else" to confirm Corcoran's depression. Although the 2000 and 2006 records reflected that Corcoran's treatment for depression was documented by two psychologists and their supervising medical doctor, Corcoran's counsel did not inform the court or McCarthy that those records existed. Under the circumstances, we agree with the observation of the District of Columbia Circuit that even though counsel may have a relevancy objection, "complete silence" was not justified. Summers v. Howard Univ., 374 F3d 1188, 1193 (DCCir 2004). We also conclude that these circumstances constitute clear and convincing evidence that Corcoran's failure to disclose and produce materials within the scope of McCarthy's discovery request was misconduct within the meaning of Rule 60(b)(3). *See Scherr*, 456 NW2d at 534. The remaining question is whether Corcoran's misconduct substantially interfered with McCarthy's ability to fully and fairly prepare or present his defense on damages. *See Anderson*, 862 F2d at 924 (concluding that "in consequence of discovery misconduct, the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial").

---

(. . . continued)
      specific discovery request or by the general duty of Rule 26.1, can constitute misconduct under Rule 60(c)(3).").

[¶21.]     The substantial interference requirement does not require a showing that access to the records "would likely have turned the tide at trial." *Id.* at 925. *See also* Schulz v. Butcher, 24 F3d 626, 631 (4thCir 1994) (indicating that information withheld need not be "result altering"); *Rozier*, 573 F2d at 1339 (same); *Scherr*, 456 NW2d at 533 (same). Nor does the determination require "that a new trial would probably produce a new result." Rauenhorst v. United States, 104 FRD 588, 598 (DMinn 1985). Instead, substantial interference is shown if the failure "denied [ ] access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Anderson*, 862 F2d at 925.

[¶22.]     Corcoran argues that this showing was not met because her psychological state was irrelevant[4] and "never an issue." She contends that she did not seek damages for "psychological suffering as a result of the collision." Rather, Corcoran contends that she only sought damages for loss of enjoyment of life due to back pain. In *Kostel  v. Schwartz*, 2008 SD 85, ¶ 83, 76 NW2d 363, 388-89, we quoted *Mora v. St. Vincent's Catholic Med. Ctr.*, 800 NYS2d 298 (NYSupCt 2005) for the proposition that when claims for loss of enjoyment of life are limited solely to the physical effects of alleged negligence, questioning regarding mental state is

---

4.     Corcoran's relevancy argument includes a contention that the records were not admissible at trial. That contention is misplaced. Ultimate admissibility is not the question. McCarthy was entitled to the records if "the information sought appear[ed] reasonably calculated to lead to the discovery of admissible evidence." SDCL 15-6-26(b)(1). *See also* Dudley v. Huizenga, 2003 SD 84, ¶ 11, 667 NW2d 644, 648 (indicating that "[d]iscovery rules are designed 'to compel the production of evidence and to promote, rather than stifle, the truth finding process'" (citation omitted)).

generally improper. *Mora*, however, also recognized the exception that "if the plaintiff seeks to recover for any specie of emotional or psychological damage, defense counsel would be entitled to probe the plaintiff on the issue of her mental health history." 800 NYS2d at 302. Furthermore, in this case, the basis for the circuit court's IME and in limine rulings (insufficient evidence of depression) made the non-produced records highly relevant to decide those pretrial motions. Each of these relevancy concerns requires us to examine the non-produced records in the context of Corcoran's damage claims and McCarthy's defenses.

[¶23.]　　　We first observe that Corcoran's damage claims at trial were not limited to physical limitations caused by chronic pain. The record reflects that Corcoran argued for damages for loss of enjoyment of life, including "mental anguish." Corcoran's co-workers also testified that after the accident Corcoran lost "emotional stamina," she was not as "happy," and suffered from depression. The non-disclosed records, however, contain substantial evidence impeaching these claims, suggesting that her emotional and psychological conditions were related to her son and the stress of school rather than the accident. With respect to McCarthy's defenses, the circuit court denied McCarthy's requested IME and granted Corcoran's requested restriction on defense testimony regarding depression because the disclosed records contained insufficient evidence of depression. However, considering the basis for the circuit court's rulings, the non-produced records of diagnosed depression indicate that the circuit court would have ruled differently on the IME and Dr. Pitzer's restrictions had the non-produced records been disclosed before trial. The significant relevance of the impeachment evidence

and the proposed defense discovery evidence is confirmed by a more detailed review of the undisclosed records.

[¶24.]    The 2000 records reflect that before the accident, Corcoran received treatment on twenty-four occasions for depression and other problems including codependency associated with her son who was developmentally disabled. According to those records, "the [pre-accident] problems with her son [were] the root of the dependency issue and her anger and depression." Although the circuit court believed there was insufficient evidence of depression, the notes of the psychologist repeatedly describe Corcoran's condition in terms such as "depression," "the depression," "quite a bit of depression," or "her depression." The 2000 records also relate to Corcoran's trial claim regarding emotional condition. The records reflect that she was "worn out," "exhausted," had "irrational thought patterns," and that she was having anxiety attacks quite frequently, about "twice a month." Moreover, the pre-accident problems were related not only to Corcoran's son, but also to the stress of school. Notwithstanding Corcoran's trial claim that the accident had deprived her of her passion of teaching, the records indicate that Corcoran's codependency problem with her son had adversely affected her school classroom before the accident. The 2000 records specifically indicate that "one of the most difficult times [Corcoran] has is when the first of the month school takes place."

[¶25.]    The 2006 records, generated less than two years after the accident, reflect that Corcoran returned to therapy not because of the accident, but because of continued psychological problems associated with her son and dissatisfaction at school. Again, notwithstanding the circuit court's pretrial ruling that there was

insufficient evidence of depression, Corcoran's 2006 initial intake assessment specifically indicated an Axis I diagnosis of dysthymia, a chronic form of depression. Thereafter, all of the remaining treatment records of psychologist Kramlich and Dr. Renka assign the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* "diagnosis code" of 300.40, a dysthymic disorder. According to this manual,[5] the essential feature of that disorder is a "chronically depressed mood" on more days than not "for at least 2 years." Notably, the 2006 records make no mention of the auto accident.

[¶26.]     Considering Corcoran's co-workers' evidence of unhappiness, emotional instability, and depression resulting from the accident, the non-produced records were relevant to impeach Corcoran's damage claims. Further, unlike the disclosed 2003 counseling notes, the non-disclosed treatment records were signed by psychologists and a supervising medical doctor who diagnosed depression. Considering the basis for the circuit court's pretrial rulings, the non-produced records would have changed the circuit court's denial of McCarthy's request for an IME and the granting of Corcoran's request to limit Dr. Pitzer's trial testimony. Different rulings on these matters would have permitted McCarthy to pursue discovery directly refuting Corcoran's damage claims. Different rulings would have also precluded impeachment of Dr. Pitzer on the basis that "he never examined her, never talked to her . . . [and only examined her] medical records." These effects on

---

5.     We have described this manual as "a standard reference for psychologists and psychiatrists." Johnson v. Albertson's, 2000 SD 47, ¶ 16, 610 NW2d 449, 452.

Dr. Pitzer's proposed testimony were significant because Corcoran's expert was allowed to testify that he did not find depression a significant component of Corcoran's pain complaint.

[¶27.]    Finally, the failure to disclose substantially interfered with McCarthy's ability to respond to Corcoran's final argument.  Corcoran's counsel argued to the jury that "the question" they faced was Corcoran's loss of enjoyment of life and that McCarthy had "robbed the joy" of Corcoran's passion, the love of teaching.  Notwithstanding this claim, there is no suggestion in Corcoran's undisclosed records relating her dissatisfaction at school to pain from the accident.  On the contrary, the undisclosed records relate Corcoran's school difficulties to unrelated matters such as problems she was having with her son.  Considering Corcoran's claims and McCarthy's defenses, the failure to produce denied access to evidence that was probative on important issues to the defense.  The failure also barred potentially fruitful avenues of direct and cross-examination.

[¶28.]    Corcoran, however, argues the records were merely cumulative.  She points out her emergency room records disclosed depression in her history.  Further, Corcoran did produce three physicians' records that contained references to depression and antidepressant medications, and a post-accident psychological evaluation for a potential closed-injury referenced the taking of medication for depression.  Corcoran contends that despite having this evidence, McCarthy chose not to explore these issues.

[¶29.]    We note that despite the existence of the disclosed records mentioning depression, without the undisclosed records corroborating a diagnosis of depression,

the circuit court's pretrial rulings foreclosed McCarthy from obtaining an IME to corroborate his defense theory. We therefore agree with the North Dakota Supreme Court's observation that "whether the [non-produced evidence], by itself, is cumulative or irrelevant misconstrues its significance because it could have led to the timely discovery of [relevant, admissible evidence.]" *Scherr,* 456 NW2d at 534.

*Conclusion*

[¶30.] By requiring McCarthy to show "fraud on the court" and a violation of an order to compel, the circuit court abused its discretion in applying the wrong legal standards. Further, the failure to produce substantially interfered with McCarthy's defense by denying use of evidence that was probative on the important issue of damages. The failure to produce also foreclosed discovery and fruitful avenues of direct and cross-examination. Therefore, Corcoran's failure to disclose and produce was sufficient to establish that McCarthy was prevented from fully and fairly preparing or presenting his case. We conclude that Corcoran's failure to disclose and produce constituted misconduct justifying relief under SDCL 15-6-60(b)(3).

[¶31.] Reversed and remanded for reinstatement of the order granting a new trial on damages.

[¶32.] GILBERTSON, Chief Justice, and MEIERHENRY and SEVERSON, Justices, concur.

[¶33.] KONENKAMP, Justice, deeming himself disqualified, did not participate.